## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLORADO

| | |
|---|---|
| JOHN DOE, a minor; JANE DOE, a minor; DEMETRIUS MAREZ; CHASE AUBREY ROUBIDEAUX; DONALD WAYNE SMITH, JR.; and the NATIVE AMERICAN GUARDIAN'S ASSOCIATION,<br><br>        Plaintiffs,<br><br>  v.<br><br>JARED POLIS, Colorado Governor; DAVE YOUNG, Colorado State Treasurer; KATY ANTHES, Commissioner of Education for the Colorado Department of Education; PHIL WEISER, Colorado Attorney General; KATHRYN REDHORSE, Executive Director of the Colorado Commission of Indian Affairs; and GEORGINA OWEN, Title VII State Coordinator for the Colorado Department of Education, in their official capacities,<br><br>        Defendants. | No. 1:21-cv-2941 _____<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

John Doe, a minor, Jane Doe, a minor, Demetrius Marez, Chase Aubrey Roubideaux, Donald Wayne Smith, Jr. and the Native American Guardian's Association (together, the "Plaintiffs"), submit this complaint against Jared Polis, in his official capacity as Colorado Governor ("Governor Polis"), Dave Young, in his official capacity as Colorado State Treasurer ("Mr. Young"), Katy Anthes, in her official capacity as Colorado Commissioner of Education for the Colorado Department of Education ("Ms. Anthes"), Kathryn Redhorse, in her official capacity

as Executive Director of the Colorado Commission of Indian Affairs ("Ms. Redhorse"), Georgina Owen, in her official capacity as Title VII Coordinator for the Colorado Department of Education ("Ms. Owen"), and Phil Weiser, in his official capacity as Colorado Attorney General ("Mr. Weiser," and together with Governor Polis, Mr. Young, Ms. Anthes, Ms. Redhorse, and Ms. Owen, the "Defendants"), hereby allege, by their undersigned counsel, as follows:

1.  Imagine a state law that barred schools from using the name or image of an African-American individual on its logos or letterhead.  That would be the end of school names honoring Martin Luther King Jr., President Barack Obama, or Justices Thurgood Marshall and Clarence Thomas.



Dr. Martin Luther King Jr. Middle School, Germantown, Maryland.[1]

      2.      Or imagine a law banning school names and letterhead honoring Latin Americans like Cesar Chavez or Justice Sonya Sotomayor.



---

[1]      https://s19499.pcdn.co/wp-content/uploads/2020/10/Martin-Luther-King-Jr.-Middle-School-featured.jpg (last visited October 28, 2021).

3.      This is an action challenging the constitutionality of Colo. Rev. Stat. § 22-1-133 and Colo. Rev. Stat. § 22-1-137 ("SB 21-116" or the "Act"), and seeking prospective and injunctive relief against Defendants, and their respective officers, agents, officials, servants, employees, attorneys, and other representatives from interpreting, administering, implementing and enforcing or threatening to enforce SB 21-116 in violation of Plaintiffs' Fourteenth Amendment rights (Counts I & II).  Plaintiffs also seek declaratory and injunctive relief in order to preserve their right to petition under the First Amendment, which is burdened by the vagaries of SB 21-116 (Count III), as well as under Title VI of the Civil Rights Act of 1964 for discrimination against Plaintiffs based on their race, color, or national origin (Count IV).

4.      Plaintiffs oppose the use of American Indian mascot performers and caricatures that mock Native American heritage—such as Lamar High School's former mascot *Chief Ugh-Lee* or the Atlanta Braves' former Native American caricature *Chief Noc-A-Homa*—in sports and other public venues.

5.      Nevertheless, culturally appropriate Native American names, logos, and imagery serve to honor Native Americans, and to help public schools neutralize offensive and stereotypical Native American caricatures and iconography, while teaching students and the general public about American Indian history.

6.      SB 21-116 sweeps derisive, neutral, and honorific uses of Native American names and imagery together into the universal term "American Indian mascot."  *See, e.g.*, Colo. Rev. Stat. § 22-1-133(1)(a) ("'American Indian mascot' means a name, symbol, or image that depicts or refers to an American Indian tribe, individual, custom, or tradition that is used as a mascot, nickname, logo, letterhead, or team name for the school.") (emphasis added).

7.      Defining even honorific uses of Native American names or imagery as merely "mascots" is offensive to our sensibilities as a nation, which do not generally permit racial discrimination.

8.      "[I]n a society in which [racial] lines are becoming more blurred, the attempt to define race-based categories also raises serious questions of its own.  Government action that classifies individuals on the basis of race is inherently suspect and carries the danger of perpetuating the very racial divisions the polity seeks to transcend."  *Schuette v. Coalition to Defend Affirmative Action*, 572 U.S. 291, 308 (2014).

9.      Erasing Native American names and images from the public square and from public discussions echoes a maneuver that Plaintiffs have previously seen used by the eradicators of Native American heritage.  Colorado repeats the same mistake in its paternalistic assumption that it must protect Native Americans by erasing cultural references to them and to their heritage.

10.     SB 21-116 unlawfully enacts state-sanctioned race discrimination against Plaintiffs.

11.     Because the eradication of Native American names, iconography and images poses serious harm to the cultural identities and heritage of Native Americans, Plaintiffs regularly engage in efforts of "reappropriation," so as to render emotionally charged Native American names, logos, and imagery nondisparaging, and to educate others as to what it means to be a Native American in American culture.  *Cf. Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017) (Kennedy, J. concurring, with Ginsburg, J., Sotomayor, J., and Kagan, J.) ("[R]espondent endeavors to use The Slants to supplant a racial epithet, using new insights, musical talents, and wry humor to make it a badge of pride. Respondent's application was denied not because the Government thought his object was to

demean or offend but because the Government thought his trademark would have that effect on at least some Asian–Americans.").

12.　"[T]he use of positive and respectful Native American imagery in schools would combat racial stereotypes and discrimination against Native American students." *See Walter v. Oregon Board of Education*, 301 Or. App. 516, 531 (Or. 2019) (rejecting equal protection challenge to state provisions which allowed Native American mascots to be used with the permission of a tribe; challenger contended that there was no way to assure uniformity within a tribe on the permissible use of its name).

13.　Erasure of Native Americans from iconography hardly inures to the benefits of Native Americans.  As an example, this popular meme circulated online after the Land O'Lakes Company eliminated an image of a Native American woman from its butter logo.



14.　Reappropriation allows Native Americans to self-identify, and non-Native American allies to associate their identities with the messages that Plaintiffs seek to convey, in order to persuade others to join the cause of Plaintiffs.  For example, Plaintiffs' attempts to honor their heritage by engaging in acts of Reappropriation include:

　　　(a) using positive Native American names, logos, and imagery as a means of Native American empowerment;

(b) retaking, "taking back," or wresting ownership of "appropriated" Native American symbols in public schools (and, in particular, sporting and other public events) through messaging and language;

(c) educating non-Native Americans (particularly in public schools) about Native American race, color, and national origin; and

(d) reversing the "ripple effect" caused by eradication efforts designed to further silence and render invisible Native American voices in American culture.

15.     Reappropriation has been used by members of historically marginalized groups seeking to reclaim names and images that were once directed at them as insults in order to turn them outward as badges of pride. *Cf. Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017) ("'Slants' is a derogatory term for persons of Asian descent, and members of the band are Asian–Americans. But the band members believe that by taking that slur as the name of their group, they will help to "reclaim" the term and drain its denigrating force."); *see also* Mark Conrad, *Matal v. Tam—A Victory for the Slants, A Touchdown for the Redskins, But an Ambiguous Journey for the First Amendment and Trademark Law*, 36 CARDOZO ARTS & ENT. L.J. 83, 94 n. 55 (2017) (describing the numerous positive reclaimings of once-offensive words for women, gays, and racial groups).

16.     For too long, non-Native Americans have used racial names, slurs, and American Indian mascot performers, stereotypes and caricatures to ridicule and debase Native Americans and their culture. Plaintiffs seek, through Reappropriation, to use images in a positive manner, in order to marginalize the racism that they and their ancestors have faced and continue to face in light of the efforts of the eradicators would erase Native American names, logos, and imagery from Colorado's public schools and, thereby, public view and debate. *Cf. Matal*, 137 S. Ct. at 1754 ("The group 'draws inspiration for its lyrics from childhood slurs and mocking nursery rhymes' and has given its albums names such as 'The Yellow Album' and 'Slanted Eyes, Slanted Hearts.'").

17.     Accordingly, Plaintiffs bring this lawsuit seeking prospective and injunctive relief against Defendants, and their respective officers, agents, officials, servants, employees, attorneys, and other representatives from interpreting, administering, implementing and enforcing or threatening to enforce SB 21-116 in violation of Plaintiffs' Fourteenth Amendment rights. Plaintiffs also seek declaratory and injunctive relief which, if granted, will inure to the benefit of all Native Americans in Colorado actually injured by SB 21-116.

18.     The plaintiffs are entitled to the requested injunction.  Since the government cannot justify its discriminatory policy, the plaintiffs will win on the merits of their constitutional claim.

19.     SB 21-116 includes a deadline of June 1, 2022, before all Colorado public schools must alter their names, logos, letterhead, and other imagery.  If the law survives between now and then, it is highly unlikely that any school choosing to invest the time and money into changing its name will return, even if the law is ultimately struck down subsequently.

## JURISDICTION AND VENUE

20.     This Court has original, federal question jurisdiction over Plaintiff's federal claims by operation of 28 U.S.C. §§ 1331 and 28 U.S.C. § 1343(a)(3) and (4).

21.     This Court has jurisdiction over this complaint under 42 U.S.C. § 1983 for deprivation of rights under the "color of state law."

22.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1367(a), which provides for supplemental jurisdiction over state law claims that are so related to the federal claims in this action such that they do not raise novel or complex issues of state law and do not substantially predominate over the federal claims.  There are, further, no exceptional circumstances compelling declining state law claims.

23.     Because this action is an actual controversy, this Court has authority to declare the rights of Plaintiffs and issue the requested declaratory relief under the Declaratory Judgment Act,

28 U.S.C. §§ 2201-2202, Rule 57 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), and by its general legal and equitable powers.

24.     This Court has authority to issue the requested temporary, preliminary, and permanent injunctive relief, pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 1343(a)(3).

25.     This Court is authorized to award the requested damages under 28 U.S.C. § 1343(a)(3).

26.     Because Plaintiffs find it necessary to engage the services of private counsel to vindicate their rights under the law, Plaintiffs are entitled to, and this Court is authorized to award, attorneys' fees under 42 U.S.C. § 1988(b).

27.     Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(1)-(2) as a substantial part of the events giving rise to these claims occurred in this judicial district and because, upon information and belief, all Defendants reside within the District.

28.     All of the acts of the Defendants, their officers, agents, employees, and servants, were executed and are continuing to be executed by Defendants under the "color of state law," 42 U.S.C. § 1983, and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of Colorado.

## PARTIES

29.     Plaintiff John Doe, a minor, resides in Yuma, in the District of Colorado. He is of Cherokee and Chippewa heritage. He currently attends Yuma High School in Yuma, Colorado, which maintains imagery referring the "Yuma Indians." He participates in many school activities, as well as football and wrestling. He wants his school to continue to honor his culture and heritage, and would suffer a hostile environment if his culture were erased from his school.

30.     Plaintiff Jane Doe, a minor, resides in Yuma, in the District of Colorado. She is of Cherokee heritage. She currently attends Yuma High School in Yuma, Colorado, which is known

as the "Yuma Indians."  She too wants her school to continue to honor her culture and heritage, and would suffer a hostile environment if her culture were erased from her school.

31.     Plaintiff Demetrius Marez resides in Lakewood, in the District of Colorado.  He is 39% Diné (pronounced "de-NEH").  He served this country as a U.S. Marine and graduated from Lamar High School in 1993.  Mr. Marez has urged Lamar High School to keep its current team name, the Savages, or in the alternative, petitioned the school to rename itself to Lamar High School Black Kettle.  Neither would be legal under SB 21-116.

32.     Plaintiff Chase Aubrey Roubideaux resides in Denver, in the District of Colorado. He is an enrolled Rosebud tribal member, with a blood degree of about 25%.  He graduated from Yuma High School in 2010.  Mr. Roubideaux has petitioned the Yuma School Board to keep the name of the Yuma Indians, or in the alternative, to rename the YHS Indians to the "Tall Bulls." Neither would be legal under SB 21-116.

33.     Plaintiff Donald Wayne Smith, Jr. resides in Yuma, in the District of Colorado.  He is the pastor of Yuma Christian Church and is of Cherokee heritage.  Pastor Smith has previously taught in Colorado public schools, including in Yuma, which uses the term "Indian" in its imagery and iconography.  Because of SB 21-116, he can no longer accept future teaching positions without being subject to a hostile environment.

34.     Plaintiff the Native American Guardian's Association ("NAGA") is a section 501(c)(3) non-profit organization organized under the laws of the State of Virginia that focuses on increased education about Native Americans, especially in public educational institutions.  NAGA seeks greater recognition of Native American heritage through sports and other high-profile public venues.  NAGA has been partnering with public schools across the country to help those schools (a) eliminate stereotypical "mascot" caricatures and iconography, chants and cheers, and (b)

develop respectful and culturally appropriate Native American names, logos, iconography and imagery.  NAGA maintains standing through associational standing, by and through its members.

35.     Defendant Jared Polis is Colorado's Governor.  Mr. Polis derives his authority from the State of Colorado and acts under the authority of the State of Colorado.  Mr. Polis is charged with interpreting, administering, implementing and enforcing SB 21-116, including its imposition of a $25,000 fine "[f]or each month during which a public school uses an American Indian mascot after June 1, 2022."  Mr. Polis is a "person" within the meaning of 42 U.S.C. § 1983, and all of the claims alleged in this case that Mr. Polis acted or failed to act in an official capacity have been taken "under color of state law" for purposes of federal civil rights law.  42 U.S.C. § 1983.  Mr. Polis is sued in his official capacity only for declaratory and injunctive relief.

36.     Defendant Dave Young is Colorado's State Treasurer.  Mr. Young derives his authority from the State of Colorado and acts under the authority of the State of Colorado.  Mr. Young is charged with interpreting, administering, implementing and enforcing SB 21-116, including its imposition of a $25,000 fine "[f]or each month during which a public school uses an American Indian mascot after June 1, 2022."  Mr. Young is a "person" within the meaning of 42 U.S.C. § 1983, and all of the claims alleged in this case that Mr. Young acted or failed to act in an official capacity have been taken "under color of state law" for purposes of federal civil rights law.  42 U.S.C. § 1983.  Mr. Young is sued in his official capacity only for declaratory and injunctive relief.

37.     Katy Antes is Colorado's Commissioner of Education for the Colorado Department of Education.  Ms. Antes derives her authority from the State of Colorado and acts under the authority of the State of Colorado.  Ms. Antes is charged with interpreting, administering, implementing and enforcing SB 21-116 including its imposition of a $25,000 fine "[f]or each

month during which a public school uses an American Indian mascot after June 1, 2022." Ms. Antes is a "person" within the meaning of 42 U.S.C. § 1983, and all of the claims alleged in this case that Ms. Antes acted or failed to act in an official capacity have been taken "under color of state law" for purposes of federal civil rights law. 42 U.S.C. § 1983. Ms. Antes is sued in her official capacity only for declaratory and injunctive relief.

38.     Phil Weiser is Colorado's Attorney General. Mr. Weiser derives his authority from the State of Colorado and acts under the authority of the State of Colorado. Mr. Weiser is charged with interpreting, administering, implementing and enforcing SB 21-116 including its imposition of a $25,000 fine for public schools "[f]or each month during which a public school uses an American Indian mascot after June 1, 2022." Mr. Weiser is a "person" within the meaning of 42 U.S.C. § 1983, and all of the claims alleged in this case that Mr. Weiser acted or failed to act in an official capacity have been taken "under color of state law" for purposes of federal civil rights law. 42 U.S.C. § 1983. Mr. Weiser is sued in his official capacity only for declaratory and injunctive relief.

39.     Kathryn Redhorse is Executive Director of the Colorado Commission of Indian Affairs. Ms. Redhorse is charged with interpreting, administering, implementing and enforcing SB 21-116 including its imposition of a $25,000 fine for public schools "[f]or each month during which a public school uses an American Indian mascot after June 1, 2022." Ms. Redhorse is a "person" within the meaning of 42 U.S.C. § 1983, and all of the claims alleged in this case that Ms. Redhorse acted or failed to act in an official capacity have been taken "under color of state law" for purposes of federal civil rights law. 42 U.S.C. § 1983. Ms. Redhorse is sued in her official capacity only for declaratory and injunctive relief.

40.     Georgina Owen is Title VII State Coordinator for the Colorado Department of Education. Ms. Owen is charged with interpreting, administering, implementing and enforcing SB 21-116 including its imposition of a $25,000 fine for public schools "[f]or each month during which a public school uses an American Indian mascot after June 1, 2022."   Ms. Owen is a "person" within the meaning of 42 U.S.C. § 1983, and all of the claims alleged in this case that Ms. Owen acted or failed to act in an official capacity have been taken "under color of state law" for purposes of federal civil rights law. 42 U.S.C. § 1983. Ms. Owen is sued in her official capacity only for declaratory and injunctive relief.

41.     Upon information and belief, all Defendants reside in the District of Colorado.

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

## SENATE BILL 21-116

42.     SB 21-116 is titled "Prohibition on use of American Indian Mascots."

43.     The Act became effective on June 28, 2021.

44.     The Act prohibits the use of American Indian mascots by public schools, including charter schools and public institutions of higher education (public school) as of June 1, 2022.

45.     The Act imposes a fine of $25,000 per month for each month that a public school continues to use a "mascot" (as defined in SB 21-116) after June 1, 2022, payable to the state education fund.

46.     The Act defined public schools to mean:

   a.     An elementary, middle, junior high, high school, or district charter school of a school district that serves any of grades kindergarten through twelve; and

   b.     An institute charter school that serves any of grades kindergarten through twelve.

Colo. Rev. Stat. § 22-1-133(1)(D)(I-II).

47.     This lawsuit challenges the following provision of SB 21-116, which provides that the term "American Indian Mascot" means:

> a name, symbol, or image that depicts or refers to an American Indian tribe, individual, custom, or tradition that is used as a mascot, nickname, logo, letterhead, or team name for the school.

48.     This provision is codified at Colo. Rev. Stat. § 22-1-133.

49.     Moreover, SB 21-116 does not include any standards or criteria for Defendants or persons of common intelligence to determine the meaning, scope, and application of SB 21-116 and its prohibition against the use of mascots by public schools.

50.     News reports initially estimated that 25 public schools in Colorado had team names, logos, and imagery that are directly impacted by SB 21-116.[2]

51.     Subsequently, the Colorado Commission of Indian Affairs (CCIA) identified approximately 28 schools that it considered to violate the new law. *See* Legislation, Schools with American Indian Mascots and/or Imagery, at https://ccia.colorado.gov/legislation (last visited October 28, 2021).

52.     As is apparent from the list issued by the CCIA, the CCIA has focused on school mascots as they are colloquially defined, rather than as broadly defined by the statute.

53.     As a result, Colorado Commission of Indian Affairs is incorrect, and the number is likely larger, given the breadth of the statute.  For instance, the following schools, among many others, may be in violation of Colo. Rev. Stat. § 22-1-133:

a.     Cherokee Trail High School (Aurora)

---

[2]     *See* Sue McMillin, "25 Colorado schools still had Native American mascots. This week one finally decided to make a change," The Colorado Sun (March 17, 2021), https://coloradosun.com/2021/03/17/cheyenne-mountain-mascot-native-american-controversy/ (last visited October 26, 2021).

b.      Cheyenne Mountain High School (Colorado Springs)[3]

c.      Cheyenne Wells High School (Cheyenne Wells)

d.      Kiowa High School (Kiowa)[4]

e.      Yampa Valley High School (Steamboat Springs)

f.      Schools in Pagosa Springs, Colorado that use the term "Pagosa" in their name, which is the Ute word for healing or boiling water.

g.      Schools in Niwot, Colorado, that use the term "Niwot" in their name.  Arapahoe Chief Niwot was a tribal leader in the Boulder, Colorado area.

54.    Each of these schools potentially use a "name, symbol, or image that depicts or refers to an American Indian tribe, individual, custom, or tradition that is used as a mascot, nickname, logo, letterhead, or team name for the school."  Colo. Rev. Stat. § 22-1-133(1)(b).

55.    There is no evidence that the CCIA conducted an extensive review of every Colorado public school's logo or letterhead to see if it might refer to a Native American tribe (perhaps because it is in a city named after a tribe) or individual.

56.    Additionally, the CCIA has opted to consider extrinsic evidence, such as the history of a name covered by SB 21-116, before deciding whether it is covered: "Eaton School District has begun the process of removing the American Indian imagery from their mascot, but retaining

---

[3]    Although Cheyenne Mountain High School no longer uses the name "Indians" in its athletic team names, the name of the school continues to include the name of the Cheyenne people.

[4]    Kiowa High School currently uses the name "Indians" in its athletics.  And it is identified by the CCIA as a school on its list of illegal names.  But removal of merely the name "Indians" would be insufficient to comply with SB 21-116, so long as the word "Kiowa" remained in the school's logo or letterhead.

the name 'Reds.' The district has a documented history of use of this name before the American Indian imagery was added in the 1960's."[5]

57.     The terms of Colo. Rev. Stat. § 22-1-133 do not apply in certain cases where an agreement exists between a federally recognized Indian tribe and a public school.  *See* Colo. Rev. Stat. § 22-1-133(2)(b).

58.     But the CCIA has identified only two schools with such agreements: Arapahoe High School and Strasburg School District.[6]  And it is hardly appropriate to condition the use of an honorific name regarding Native American ancestry on a school's ability to locate, negotiate, and contract with a tribe that may or may not represent the interests of the school's Native American constituents.

59.     Delegating to individual tribes the right to approve of certain school names merely exploits those tribes as potential state-sponsored shields from criticism.

60.     Nor are individual tribes the sole gatekeepers of whether something ought to be legal or not.  The statute's constitutionality cannot rest on such an exception.

61.     If SB 21-116 succeeds at erasing Native American names from public schools in Colorado, Native American students, teachers, and other staff  who want their schools to reflect their heritage will be placed on a distinct and lesser playing field.

## CAUSES OF ACTION

### COUNT I
### FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION OF THE LAWS
### (42 U.S.C. § 1983)

---

[5]     https://ccia.colorado.gov/legislation (last visited October 28, 2021).

[6]     *Id.*

62.     Plaintiffs incorporate by reference, repeat and reallege each allegation set forth in the preceding paragraphs of this Complaint as if each such paragraph was set forth in its entirety herein.

63.     Plaintiffs are Native Americans who subscribe to the idea of Reappropriation, and who have and will continue to petition school districts and educational entities to use Native American names as honorifics in order to reclaim their meaning and to teach non-Native American students in public schools about Native American history.

64.     SB 21-116 discriminates against Native Americans on the basis of race, color, and national origin.  For instance, Colorado public schools could use the name "Fighting Irish" or "Boston Celtics," or the name "Vikings" with a medieval Scandinavian warship logo, but may not generally use Native American iconography, or the use of the name "Fighting Sioux" or "Indian," with a culturally appropriate Native American logo, iconography or imagery.

65.     SB 21-116, both on its face and as applied by Defendants, violates Plaintiffs' rights to equal protection of the laws as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

66.     The Fourteenth Amendment to the U.S. Constitution protects Plaintiffs from disparate treatment on the basis of race, color, and national origin.

67.     Plaintiffs' beliefs, practices, rituals, actions, and conduct related to Reappropriation with respect to Native American names, logos, and imagery, including in public schools, are avenues through which they educate others about their Native American race, ethnic heritage, traditions, religious beliefs, exercise and practices.

68.     After SB 21-116, only individuals who are not Native American are able to use imagery and iconography adopted by school districts or other educational entities as avenues

through which they educate others about their race, ethnic heritage, traditions, religious beliefs, exercise and practices.

69.     Plaintiffs seek to continue exercising their beliefs, practices, rituals, actions, and conduct related to Reappropriation, including teaching non-Native American students in Colorado's public schools about Native American history.

70.     Plaintiffs are similarly situated in all relevant aspects to non-Native Americans.

71.     SB 21-116 demeans and stigmatizes Native Americans based on their race, color, and national origin.

72.     Ultimately, SB 21-116 denies Native Americans the opportunity to honor their heritage by provoking conversations and engaging with others about racial identity and racial stereotypes within and without the Native American community, helping others to understand the difference between appropriate and inappropriate use of Native American history and imagery.

73.     SB 21-116 unlawfully discriminates against Plaintiffs, as members of a suspect class.

74.     Both on its face and as applied, SB 21-116 expressly classifies based on race, color, and national origin by prohibiting any American Indian Tribe "name," "symbol," or "image."

75.     "Classifications of citizens solely on the basis of race are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality. They threaten to stigmatize individuals by reason of their membership in a racial group and to incite racial hostility." *Shaw v. Reno*, 509 U.S. 630, 643 (1993).

76.     SB 21-116's discrimination against Plaintiffs and their race, color, and national origin is presumptively unconstitutional and is subject to strict scrutiny.

77.     Defendants were motivated by a discriminatory purpose against Native Americans. Native Americans will be disproportionately burdened by SB 21-116.

78.     SB 21-116 does not satisfy strict scrutiny.

79.     SB 21-116 does not further a compelling governmental interest of Colorado.

80.     SB 21-116 is not narrowly tailored to further a compelling governmental interest of Colorado.

81.     Colorado has no legitimate governmental interest in furthering race discrimination that harms Plaintiffs based on their race, color, and national origin.

82.     The Colorado Legislature knew from debate within the General Assembly and witness testimony at hearings that SB 21-116 would harm Native Americans.

83.     Nevertheless, the Colorado Legislature passed SB 21-116 in order to protect from offense, in part, non-Native American bystanders who are not the targets of racism and discrimination with regard to Native American names, logos, and imagery.

84.     To the extent that legitimate state interests are at issue, the government can achieve those interests in a manner that does not violate Plaintiffs' civil rights or equal protection of the laws guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

85.     Defendants are charged with interpreting, administering, implementing and enforcing SB 21-116, including its imposition of a $25,000 per month fine for public schools that continue to use a covered "mascot" (as defined in SB 21-116) after June 1, 2022.

86.     Defendants' discrimination against Plaintiffs and their Native American race, color, and national origin when acting in their respective managerial roles is unlawful.

87.     All actions taken by Defendants were done while acting under the color of state law, statute, regulation or custom of Colorado and had the effect of depriving Plaintiffs of rights secured by the U.S. Constitution, specifically the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

88.     All actions taken by Defendants were done pursuant to official policies, practices, and customs.

89.     As a direct and proximate result of SB 21-116, Plaintiffs have suffered and will suffer irreparable harm to their constitutional rights and their rights under Federal and State laws.

90.     Plaintiffs have no adequate legal, administrative, or other remedy at law by which to prevent or minimize this harm.

91.     An actual and immediate controversy exists between Plaintiffs and Defendants concerning the constitutionality of SB 21-116.

92.     Absent injunctive and declaratory relief enjoining Defendants and their agents, officials, servants, employees and attorneys from implementing and administering SB 21-116, Plaintiffs have suffered and will continue to suffer great and irreparable harm.

93.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief.

94.     Plaintiffs are entitled to a final judgment under 28 U.S.C. §§ 2201 and 2202 and the Fourteenth Amendment of the U.S. Constitution declaring that SB 21-116 violates Plaintiffs' rights under the Fourteenth Amendment of the U.S. Constitution without due process of law.

**COUNT II**
**FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION:**
**POLITICAL PROCESS DISCRIMINATION BASED ON RACE**
**(42 U.S.C. § 1983)**

95.     Plaintiffs incorporate by reference, repeat and reallege each allegation set forth in the preceding paragraphs of this Complaint as if each such paragraph was set forth in its entirety herein.

96.     Plaintiffs are entitled to a final judgment under 28 U.S.C. §§ 2201 and 2202 and the Fourteenth Amendment of the U.S. Constitution declaring that SB 21-116 violates Plaintiffs' rights under the Fourteenth Amendment of the U.S. Constitution.

97.     "It is beyond dispute, of course, that given racial or ethnic groups may not be . . . precluded from entering into the political process in a reliable and meaningful manner." *Washington v. Seattle School Dist. No. 1*, 458 U.S. 457, 467 (1982).

98.     "[T]he political majority may generally restructure the political process to place obstacles in the path of everyone seeking to secure the benefits of governmental action.  But a different analysis is required when the State allocates governmental power nonneutrally, by explicitly using the *racial* nature of a decision to determine the decisionmaking process."  *Id.* at 470.

99.     Such a structuring of the political process is "no more permissible than is denying members of a racial minority the vote, on an equal basis with others." *Id.* at 470 (internal brackets omitted).

100.     Legislation of this nature is inherently suspect, without regard to discriminatory intent.  *Id.* at 485 ("We have not insisted on a particularized inquiry into motivation in all equal protection cases: 'A racial classification, regardless of purported motivation, is presumptively invalid and can be upheld only upon an extraordinary justification.' And legislation of the kind challenged in *Hunter* similarly falls into an inherently suspect category.").

101.    The Court in *Seattle* noted that strict scrutiny applied to such legislation, just as it applied to other racial classifications.  *Id.* at 485 n.28 ("The State does not suggest that Initiative 350 furthers the kind of compelling interest necessary to overcome the strict scrutiny applied to explicit racial classifications.").

102.    The Court appropriately narrowed *Seattle* in *Schuette v. Coalition to Defend Affirmative Action*, 572 U.S. 291, 305 (2014), noting that in some ways, its holding was far too broad.  *Id.* at 307 ("[A]ccording to the broad reading of *Seattle*, any state action with a 'racial focus' that makes it 'more difficult for certain racial minorities than for other groups' to 'achieve legislation that is in their interest' is subject to strict scrutiny. … [T]hat reading must be rejected.").

103.    Nevertheless, the *Schuette* Court preserved *Seattle*'s core rationale, which applies to the instant case even more clearly than it applied to the action at issue in *Seattle*: "*Seattle* is best understood as a case in which the state action in question (the bar on busing enacted by the State's voters) had the serious risk, if not purpose, of causing specific injuries on account of race, just as had been the case in *Mulkey* and *Hunter*."  *See id.* at 314 ("Those cases [like *Seattle*] were ones in which the political restriction in question was designed to be used, or was likely to be used, to encourage infliction of injury by reason of race.").

104.    SB 21-116 generally relegates decision-making regarding a school name, logo, or imagery related to a Native American to the State of Colorado, as opposed to every other effort by individuals who are non-Native Americans to obtain name recognition.

105.    Individuals who are not Native American may request, in the ordinary course, that a public school adopt a name honoring their heritage or history.  There is no need to ask the State Legislature of Colorado to amend a bill like SB 21-116 before such a naming may occur.  For

instance, an African-American individual may request that his school be named after Frederick Douglass without seeking amendment of state law.

106.     On the other hand, for a "name, symbol, or image that depicts or refers to an American Indian Tribe, individual, custom, or tradition that is uses as a mascot, nickname, logo, letterhead, or team name for the school," one must lobby the Colorado State Legislature.

107.     Defendants may not relegate to second-class status the unique interests of particular racial groups.

108.     Colorado lacked appropriate legal authority under SB 21-116 to deprive Plaintiffs of their fundamental rights under Title VI.

109.     Defendants are charged with interpreting, administering, implementing and enforcing SB 21-116 including $25,000 fine for public schools that continue to use a "mascot" (as defined in SB 21-116) after June 1, 2022.

110.     Defendants cannot discriminate against Plaintiffs and their Native American race, color, or national origin when acting in their respective managerial roles.

111.     All actions taken by Defendants were done while acting under the color of state law, statute, regulation or custom of Colorado and had the effect of depriving Plaintiffs of rights secured by the U.S. Constitution.

112.     All actions taken by Defendants were done pursuant to official policies, practices, and customs.

113.     Defendants knew or should have known that they were violating Plaintiffs' constitutional rights and their rights under federal and State laws and their fundamental rights under federal and State laws.

114.    As a direct and proximate result of SB 21-116, Plaintiffs have suffered and will suffer irreparable harm to their constitutional rights and their rights under federal and State laws.

115.    Plaintiffs have no adequate legal, administrative, or other remedy at law by which to prevent or minimize this harm.

116.    An actual and immediate controversy exists between Plaintiffs and Defendants concerning the constitutionality of SB 21-116.

117.    Absent injunctive and declaratory relief enjoining Defendants and their agents, officials, servants, employees and attorneys from implementing and administering SB 21-116, Plaintiffs have been and will continue to suffer great and irreparable harm.

118.    Defendants have acted and are continuing to act "under color of state law" for purposes of federal civil rights law.  42 U.S.C. § 1983.

119.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief.

120.    Plaintiffs are entitled to a final judgment under 28 U.S.C. §§ 2201 and 2202 and Title VI declaring that SB 21-116 violates Plaintiffs' rights under Title VI.

## COUNT III
## (FIRST AMENDMENT RIGHT TO PETITION: VAGUENESS)
### (42 U.S.C. § 1983)

121.    Plaintiffs incorporate by reference, repeat and reallege each allegation set forth in the preceding paragraphs of this Complaint as if each such paragraph was set forth in its entirety herein.

122.    "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives.  To further this goal, the right to petition extends to all departments of the Government." *Santa Fe Alliance for Public Health and Safety v.*

*City of Santa Fe, New Mexico*, 993 F.3d 802, 819 (10th Cir. 2021) (internal quotation marks, citations, and ellipses omitted).

123.    SB 21-116 contains vague language because it prohibits the use in public schools of a "name, symbol, or image that depicts or refers to an American Indian Tribe, individual, custom, or tradition that is uses as a mascot, nickname, logo, letterhead, or team name for the school." Plaintiffs on occasion have or will engage in efforts to persuade school districts or other educational entities to name themselves in honor of Native Americans.

124.    Despite the general prohibition on a much broader swath of names, only a handful of schools or districts have been identified by the CCIA as violating SB 21-116.

125.    Indeed, even the CCIA is sending contrary messages, by suggesting that the team name "Reds" is acceptable, since the name pre-existed the use of the school's use of Native American imagery. One of the Plaintiffs has asked a school district—if it must replace the name "Indians"—to replace it with the honorific name "Tall Bulls." Does SB 21-116 cover such a name? How about just simply the Bulls? The fact that CCIA's various interpretations—which apparently consider extrinsic evidence—conflict with the plain text of the law demonstrate its ambiguity.

126.    Plaintiffs have a Constitutional right to petition in a manner of their choosing, consistent with their beliefs, practices, rituals, actions, and conduct related to Reappropriation.

127.    The Due Process Clause of the Fourteenth Amendment incorporates against the Defendants the right to petition.

128.    The Due Process Clause's definition of "liberty" and fundamental fairness protects Plaintiffs' rights to publicly express and engage in their beliefs, practices, rituals, actions, and conduct related to Reappropriation in the political, civic, and economic life of the larger community.

129.     SB 21-116, both on its face and as applied by Defendants, is so vague as to chill Plaintiffs' petition efforts, by discouraging them from petitioning that a school or education entity do something that may or may not be legal. Similarly, SB 21-116 will concomitantly chill any school's willingness to adopt a name of a Native American, given the vagueness of the law, and the high stakes of violating the law.

130.     SB 21-116 is impermissibly vague because it fails to provide a reasonable opportunity to know what conduct is prohibited by law.

131.     Because SB 21-116 infringes upon the rights of Plaintiffs that are constitutionally protected, it is unconstitutionally vague.

132.     Persons of common intelligence must necessarily guess at the meaning, scope, and application of SB 21-116.

133.     SB 21-116 seems to vest Defendants, CCIA, and their agents, officials, servants, employees and attorneys with unbridled discretion with regard to Native American "mascots."

134.     SB 21-116 grants Defendants unbridled discretion by making it unlawful for public schools to have a Native American "name, symbol, or image that depicts or refers to an American Indian Tribe, individual, custom, or tradition that is used as a mascot, nickname, logo, letterhead, or team name for the school."

135.     SB 21-116 does not define what constitutes a "name," "symbol," or "image."

136.     Defendants are charged with interpreting, administering, implementing and enforcing SB 21-116, including its imposition of a monthly $25,000 fine for public schools that continue to use a "mascot" (as defined in SB 21-116) after June 1, 2022.

137.     Accordingly, SB 21-116 is an unconstitutional violation of Plaintiffs' First Amendment right to petition rights under the U.S. Constitution.

138.     As a direct and proximate result of SB 21-116, Plaintiffs have suffered and will suffer irreparable harm to their constitutional rights and their rights under federal and State laws.

139.     Plaintiffs have no adequate legal, administrative, or other remedy at law by which to prevent or minimize this harm.

140.     An actual and immediate controversy exists between Plaintiffs and Defendants concerning the constitutionality of SB 21-116.

141.     Absent injunctive and declaratory relief enjoining Defendants and their agents, officials, servants, employees and attorneys from implementing and administering SB 21-116, Plaintiffs have suffered and will continue to suffer great and irreparable harm.

142.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief.

143.     Plaintiffs are entitled to a final judgment declaring that SB 21-116 is void for vagueness by failing to provide persons of ordinary intelligence a reasonable opportunity to understand the breadth of the law.

## COUNT IV
### (TITLE VI OF THE CIVIL RIGHTS ACT)
### (42 U.S.C. § 1983)

144.     Plaintiffs incorporate by reference, repeat and reallege each allegation set forth in the preceding paragraphs of this Complaint as if each such paragraph was set forth in its entirety herein.

145.     Title VI of the Civil Rights Act of 1964 provides that no person "shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

146.    Colorado and its public schools receive federal funds and financial assistance and are, accordingly, subject to Title VI's prohibitions.  *See* 42 U.S.C. §2000d-4a.

147.    Recipients of federal funds are barred from engaging in race discrimination.

148.    Title VI provides a private right of action for individuals who suffer race discrimination at the hands of a recipient of federal funds.  *See Regents of the University of California Davis v. Bakke*, 438 U.S. 265, 287 (1978) (Title VI prohibits the same conduct that the equal protection clause prohibits).

149.    SB 21-116, both on its face and as applied by Defendants, violates Plaintiffs' rights as guaranteed by Title VI.

150.    SB 21-116 denies Plaintiffs' their liberty, disparages their intimate personal choices and identity, and devalues their personhood.

151.    Both on its face and as applied, SB 21-116 unlawfully discriminates against Plaintiffs "on the ground of race, color, or national origin."  42 U.S.C. § 2000d.

152.    SB 21-116 targets Native Americans for disparate treatment on the basis of race, color, or national origin thereby violating Title VI.

153.    SB 21-116 codifies into law Colorado's disparate treatment on the basis of race, color, or national origin and views the use of Native American names, logos, and imagery as offensive.

154.    Title VI protects Plaintiffs from disparate treatment on the basis of race, color, or national origin.

155.    Plaintiffs' beliefs, practices, rituals, actions, and conduct related to Native American names, logos, and imagery, including in public schools, are avenues through which they

educate others about their Native American race, ethnic heritage, traditions, religious beliefs, exercise and practices.

156.    Plaintiffs' beliefs, practices, rituals, actions, and conduct related to their Native American race, color, or national origin are protected by Title VI.

157.    Additionally, Title IV covers hostile environment claims.    *See Bryant v. Independent School Dist. No. I-38*, 334 F.3d 928, 932 (10th Cir. 2003).  Here, the State of Colorado, and all public schools forced to change their name or refrain from adopting an honorific name related to Native Americans, (1) have knowledge of their conduct, (2) are deliberately indifferent to their own harassing conduct.  Additionally, erasure of Native American culture is (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprives the Plaintiffs who are students of equal access to the educational benefits or opportunities provided by the school.

158.    Because each of the elements for a hostile environment claim are satisfied, Defendants are liable under Title VI of the Civil Rights Act.

159.    Plaintiffs are similarly situated in all relevant aspects to non-Native Americans.

160.    SB 21-116 demeans and stigmatizes Native Americans based on their race, color, or national origin.

161.    SB 21-116 denies Native Americans the opportunity to engage in the most fundamental act of human dignity—to honor their heritage by provoking conversations and engaging with others about racial identity and racial stereotypes within and without the Native American community.

162.    SB 21-116 primarily benefits non-Native American bystanders who are not the targets of racism and discrimination with regard to Native American names, logos, and imagery over Plaintiffs.

163.    SB 21-116 primarily burdens Plaintiffs by prohibiting culturally and spiritually appropriate Native American names, logos, and imagery that honor Native Americans in favor of non-Native American bystanders who are not the targets of racism and discrimination with regard to Native American names, logos, and imagery over Plaintiffs.

164.    Plaintiffs are members of a suspect class based on their race, color, or national origin.

165.    SB 21-116 unlawfully discriminates against Plaintiffs, as members of a suspect class.

166.    SB 21-116 unlawfully discriminates against Plaintiffs, not as underrepresented minorities, beneficiaries of racial preferences and members of a protected group, but as a State-sanctioned instrument primarily to confer benefits on non-Native American bystanders who are not the targets of racism and discrimination with regard to Native American names, logos, and imagery over Plaintiffs.

167.    SB 21-116 unlawfully discriminates against Plaintiffs' beliefs, practices, rituals, actions, and conduct related to their Native American race, color, or national origin.

168.    Both on its face and as applied, given its title "Prohibit American Indian Mascots," SB 21-116 expressly classifies based on race, color, or national origin.

169.    Both on its face and as applied, SB 21-116 expressly classifies based on race, color, or national origin by prohibiting "American Indian mascots in Colorado."

170.    Both on its face and as applied, SB 21-116 expressly classifies based on race, color, or national origin.

171.    Both on its face and as applied, SB 21-116 expressly classifies based on race, color, or national origin by prohibiting any American Indian Tribe "name," "symbol," or "image."

172.    SB 21-116's discrimination against Plaintiffs and their race, color, or national origin is presumptively unconstitutional and is subject to strict scrutiny.

173.    Defendants' enforcement of SB 21-116 has a discriminatory effect against Native Americans.

174.    Defendants were motivated by a discriminatory purpose against Native Americans. Native Americans will be disproportionately burdened by SB 21-116.

175.    When the enforcement of laws, like SB 21-116, infringe on Plaintiffs' fundamental rights, courts presume discriminatory intent.

176.    Plaintiffs' fundamental rights have been denied under Title VI.

177.    The Colorado Legislature knew from debate within the General Assembly and witness testimony at hearings that SB 21-116 would harm Native Americans.

178.    Nevertheless, the Colorado Legislature passed SB 21-116 in order to protect, in part, non-Native American bystanders who are not the targets of racism and discrimination with regard to Native American names, logos, and imagery over Plaintiffs.

179.    Colorado lacked appropriate legal authority under SB 21-116 and the Colorado Constitution to deprive Plaintiffs of their fundamental rights under Title VI and Colorado's Constitution.

180.    Defendants are charged with interpreting, administering, implementing and enforcing SB 21-116 including $25,000 fine for public schools that continue to use a "mascot" (as defined in SB 21-116) after June 1, 2022.

181.    Defendants cannot discriminate against Plaintiffs and their Native American race, color, or national origin when acting in their respective managerial roles.

182.    All actions taken by Defendants were done while acting under the color of state law, statute, regulation or custom of Colorado and had the effect of depriving Plaintiffs of rights secured by the U.S. Constitution, specifically Title VI.

183.    All actions taken by Defendants were done pursuant to official policies, practices, and customs.

184.    Defendants knew or should have known that they were violating Plaintiffs' constitutional rights and their rights under federal and State laws and their fundamental rights under federal and State laws.

185.    As a direct and proximate result of SB 21-116, Plaintiffs have suffered and will suffer irreparable harm to their constitutional rights and their rights under federal and State laws.

186.    Plaintiffs have no adequate legal, administrative, or other remedy at law by which to prevent or minimize this harm.

187.    An actual and immediate controversy exists between Plaintiffs and Defendants concerning the constitutionality of SB 21-116.

188.    Absent injunctive and declaratory relief enjoining Defendants and their agents, officials, servants, employees and attorneys from implementing and administering SB 21-116, Plaintiffs have been and will continue to suffer great and irreparable harm.

189.    Defendants have acted and are continuing to act "under color of state law" for purposes of federal civil rights law.  42 U.S.C. § 1983.

190.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief.

191.    Plaintiffs are entitled to a final judgment under 28 U.S.C. §§ 2201 and 2202 and Title VI declaring that SB 21-116 violates Plaintiffs' rights under Title VI.

## COUNT V
## (INJUNCTIVE RELIEF AGAINST STATE)

192.    Plaintiffs incorporate by reference and reallege each allegation set forth in the preceding paragraphs of this Complaint as if each such allegation was set forth in its entirety herein.

193.    Defendants have caused Plaintiffs to suffer irreparable harm for which money damages are unavailable and/or inadequate relief.

194.    SB 21-116 codifies into law Colorado's disfavor of the Native American race and views the use of Native American names, logos, and imagery as offensive.

195.    SB 21-116 codifies into law unconstitutional discrimination against Plaintiffs and their Native American race, color, and national origin, thereby denying Plaintiffs equal protection under the law.

196.    Defendants' enforcement of SB 21-116 has a discriminatory effect against Native Americans.

197.    Defendants were motivated by a discriminatory purpose against Native Americans.

198.    Defendants knew or should have known that they were violating Plaintiffs' constitutional rights and their rights under federal and State laws and their rights under federal and State laws.

199.    As a direct and proximate result of SB 21-116, Plaintiffs have suffered and will suffer irreparable harm to their constitutional rights and their rights under federal and State laws.

200.    Plaintiffs have no adequate legal, administrative, or other remedy at law by which to prevent or minimize this harm.

201.    Absent injunctive and declaratory relief enjoining Defendants and their agents, officials, servants, employees and attorneys from implementing and administering SB 21-116, Plaintiffs have been and will continue to suffer great and irreparable harm.

202.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief.

203.    Under Fed. R. Civ. P. 57 and 65, Plaintiffs are entitled to injunctive relief against Defendants which would prohibit Defendants, their officers, agents, officials, servants, employees, attorneys, other representatives and those persons in active concert or participation with such persons from enforcing or threatening to enforce SB 21-116.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, jointly and severally, as follows:

A.    Issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and their officers, agents, officials, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from implementing and administering SB 21-116.

B.    Enter a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 declaring that SB 21-116's challenged provisions are unconstitutional, both on their face and as applied to Plaintiffs, and that SB 21-116:

1.    violates Plaintiffs' rights under the Fourteenth Amendment of the U.S. Constitution without due process of law;

2.    constitutes political process discrimination in violation of Plaintiffs' rights under the Fourteenth Amendment of the U.S. Constitution;

3.    is void for vagueness under the First Amendment of the U.S. Constitution by failing to provide persons of ordinary intelligence a reasonable opportunity to understand what the law is; and

       4.      SB 21-116 violates Plaintiffs' rights under Title VI.

C.      Adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter here in controversy so that these declarations shall have the force and effect of a final judgment.

D.      Award Plaintiffs nominal damages of $1.00.

E.      Retain jurisdiction over this matter for the purpose of enforcing its orders.

F.      Enter judgment awarding Plaintiffs reasonable attorneys' fees, costs, expenses, and other disbursement, pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988, and Federal Rules of Civil Procedure 23(e) and (h).

G.      Enter the above-requested injunctive relief without condition of bond or other security being required of Plaintiffs.

H.      Grant such other and further relief as the Court deems just, necessary, and proper to protect Plaintiffs.

Dated:  November 2, 2021

/s/ *William E. Trachman*
William E. Trachman, CO Bar #45684
Joseph A. Bingham\*
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
Email: wtrachman@mslegal.org
\* *Admission Papers to Be Filed*

— and —

Scott D. Cousins\*
Scott D. Jones\*
COUSINS LAW LLC
Brandywine Plaza West
1521 Concord Pike, Suite 301
Wilmington, Delaware 19803
Telephone: (302) 824-7081
Facsimile: (302) 292-1980
Email: scott.cousins@cousins-law.com
\* *Admission Papers to Be Filed*

S