**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Regina M. Rodriguez**

Civil Action No. 1:21-cv-02941-RMR-NYW

DEMETRIUS MAREZ et al.,

      Plaintiffs,

v.

KATHRYN REDHORSE,
Executive Director of the Colorado Commission of Indian Affairs,

      Defendant.

---

## ORDER

---

Colorado enacted Senate Bill 21-116 in order to address the history of discrimination against American Indians in Colorado and the negative impacts on American Indians of derogatory American Indian mascots. Plaintiffs have alleged that the statute is misguided and discriminatorily deprives them of the opportunity to have a school mascot representative of their culture. They further assert that the statute creates an unconstitutional barrier to those who identify as American Indians and seek to have an American Indian school mascot.  While the claims at issue in this case may touch on matters of public debate, that in and of itself does not create a justiciable case and controversy sufficient to endow this Court with authority to adjudicate them.  Before the Court can reach the merits of a claim, it must satisfy itself that the plaintiff bringing that claim has established standing to do so.  The Plaintiffs here have not met their burden of

establishing standing, and the Court therefore may not adjudicate the merits of the underlying claims.

For these reasons, and for the reasons set forth herein, the Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE.

## I.      BACKGROUND

Current students, alumni, a former teacher,[1] and a non-profit organization have sued Kathryn Redhorse, the Executive Director of the Colorado Commission of Indian Affairs, arguing that Colorado's statute, which prohibits Colorado public schools from using American Indian mascots, except under certain circumstances, such as when no federally recognized Indian tribe has agreed to their use, violates Plaintiffs' rights under the First and Fourteenth Amendments of the U.S. Constitution, as well as Title VI of the Civil Rights Act of 1964.

### A.      Colorado Senate Bill 21-116

The statute at issue, Colorado Senate Bill 21-116 ("SB 21-116" or the "Act"), was adopted following the establishment of a commission, "comprised of American Indian leaders from across the state," to study American Indian representations in public schools.  ECF No. 42-1 at 2–3.  On the commission's recommendation, the Colorado Legislature determined that, "passing legislation to retire all American Indian mascots in the state will provide another step toward justice and healing to the descendants of the survivors of the Sand Creek Massacre, most notably the Cheyenne and Arapaho tribes, as well as other American Indians in Colorado who have been harmed or offended by

---

[1] *See infra* note 6.

these discriminatory mascots." *Id.* at 3.  Therefore, the Colorado Legislature passed SB 21-116.  *Id.*

On June 28, 2021, Colorado Governor Jared Polis signed into law SB 21-116, which prohibits, with certain exceptions, the use of an "American Indian mascot," as defined in the Act, by public schools in Colorado and provides that schools continuing to use any such American Indian mascot after June 1, 2022 must pay a fine of $25,000. *See* Colo. Rev. Stat. §§ 22-1-133(2)(a), (3), 23-1-137(1)(a), (3); ECF No. 42-1 at 3–4, 9. Applicable schools "may apply to the department of education for a grant . . . to accomplish any structural changes that might be necessary to come into compliance" with the Act.  Colo. Rev. Stat. §§ 22-1-133(5), 22-43.7-109(5)(c.3); ECF No. 42-1 at 6.

The Act states that "[d]espite continued claims that such mascots honored American Indian peoples, the majority of such mascots in Colorado regularly employed racist stereotypes, from Eaton high school's large-nosed caricatures to Lamar high school's 'Chief Ugh-Lee' mascot."  ECF No. 42-1 at 2.  The Colorado Legislature further found that "[b]y the time of the civil rights movement in the 1960s, the first wave of American Indian activists began calling for an end to American Indian mascots" and that "[a]lthough organizations like the National Commission on Civil Rights, the NAACP, the National Congress of American Indians, and the American Psychological Association published statements condemning American Indian mascots, few Colorado schools would take heed, even into the early 2000s."  *Id.*

The Act defines "American Indian mascot" to mean "a name, symbol, or image that depicts or refers to an American Indian tribe, individual, custom, or tradition that is used

as a mascot, nickname, logo, letterhead, or team name for the school."  Colo. Rev. Stat. §§ 22-1-133(1)(a), 23-1-137(1)(a); ECF No. 42-1 at 3.  The exceptions to the Act's prohibition on the use of American Indian mascots include, first, that "a public school that is named after an American Indian tribe or American Indian individual may use the tribe's or individual's name, but not an image or symbol, on the public school's letterhead."  Colo. Rev. Stat. § 22-1-133(2)(a); ECF No. 42-1 at 4.  Second, the prohibition does not apply to "[a]ny agreement that exists prior to June 30, 2021, between a federally recognized Indian tribe," as defined in the Act,[2] and a public school.  Colo. Rev. Stat. §§ 22-1-133(2)(b)(I), 23-1-137(2)(b)(I); ECF No. 42-1 at 4.  Third, the prohibition does not apply to any public school "that is operated by a federally recognized Indian tribe or with the approval of a federally recognized Indian tribe and existing within the bounds of such tribe's reservation."  Colo. Rev. Stat. §§ 22-1-133(2)(b)(II), 23-1-137(2)(b)(II); ECF No. 42-1 at 4–5.  Fourth, the prohibition does not apply to "[t]he ability of any federally recognized Indian tribe to create and maintain a relationship or agreement with a public school that fosters goodwill, emphasizes education and supports a curriculum that teaches American Indian history, and encourages a positive cultural exchange."  Colo. Rev. Stat. § 22-1-133(b)(III)(A); ECF No. 42-1 at 5.

B.    **The Plaintiffs**

There are six Plaintiffs in this action, each of whom alleges that they are in some way impacted by SB 21-116:

1.  Plaintiff John Doe is a minor student currently attending Yuma High School in Yuma, Colorado. Plaintiff John Doe alleges that he is "of Cherokee and

---

[2] *See* Colo. Rev. Stat. § 22-1-133(2)(b)(III)(C).

4

Chippewa heritage," but he has not alleged that he is a registered member of either tribe. John Doe wants his school to maintain its imagery referring to the "Yuma Indians." ECF No. 39 ¶ 29.

2. Plaintiff Jane Doe is also a minor student currently attending Yuma High School in Yuma, Colorado. Plaintiff Jane Doe alleges that she is "of Cherokee heritage," but she has not alleged that she is a registered member of the tribe. Jane Doe wants her school to maintain its imagery referring to the "Yuma Indians." *Id.* ¶ 30.

3. Plaintiff Demetrius Marez is not a student at any Colorado public school, but he alleges that he is a 1993 graduate of Lamar High School and that he is "39% Diné." Mr. Marez petitioned Lamar High School to keep its current team name, "the Savages." Alternatively, Mr. Marez asked the school to adopt the name "Lamar High School Black Kettle." *Id.* ¶ 31.

4. Plaintiff Chase Aubrey Roubideaux is not a student at any Colorado public school, but he alleges that he is a 2010 graduate of Yuma High School. Mr. Roubideaux is an enrolled Rosebud tribal member. Mr. Roubideaux petitioned the Yuma School Board to keep the name of "Yuma Indians" or asked that the team be renamed to the "Tall Bulls." *Id.* ¶ 32.

5. Plaintiff Donald Wayne Smith, Jr. is not a student or teacher at any Colorado public school. Mr. Smith alleges that he has previously taught in Colorado public schools, including in Yuma.[3] Mr. Smith alleges that he is "of Cherokee heritage." *Id.* ¶ 33.

6. Plaintiff Native American Guardian's Association ("NAGA") is a 501(c)(3) nonprofit organization that "seeks greater recognition of Native American heritage through sports and other high-profile public venues." Plaintiff Demetrius Marez is a member of NAGA. *Id.* ¶ 34.

**C.    Procedural History**

On November 2, 2021, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief (the "Complaint") against six Colorado state officials, including Colorado Governor Jared Polis and Executive Director of the Colorado Commission of Indian Affairs, Kathryn Redhorse, requesting that the Court find that SB 21-116 is unconstitutional. ECF No. 1

---

[3] *See infra* note 6.

at 34–35.   On November 5, 2021, Plaintiffs filed a Motion for Preliminary Injunction, requesting that the Court "issue a preliminary injunction barring Defendants from taking any actions to enforce [SB 21-116]."  ECF No. 4 at 2.  On December 1, 2021, the Court denied the Motion for Preliminary Injunction because Plaintiffs had not established that they would suffer an immediate, irreparable injury pending the ultimate determination of this case.  ECF No. 24 at 1–3.  Plaintiffs filed an interlocutory appeal of the Court's order. ECF Nos. 25, 28–29.  On January 27, 2022, the Tenth Circuit rejected Plaintiffs' request for an injunction pending their interlocutory appeal.  *See Marez et al. v. Polis et al.*, No. 21-1421 (10th Cir. Jan. 27, 2022).  On February 9, 2022, the Tenth Circuit dismissed Plaintiffs' interlocutory appeal for lack of prosecution.  ECF Nos. 44–45.

On January 28, 2022, Plaintiffs filed an Amended Complaint in this case, asserting the same claims but dismissing all Defendants except for Defendant Kathryn Redhorse. *Compare* ECF No. 1, *with* ECF No. 39; *see also* ECF No. 35.[4]  Defendant consented in writing to Plaintiffs' filing the Amended Complaint.  ECF No. 41 at 1.  Thereby, the Amended Complaint became the operative pleading under Federal Rule of Civil Procedure 15(a)(2).  *See* Fed. R. Civ. P. 15(a)(2); ECF No. 40.

The Amended Complaint alleges that SB 21-116, codified at Colo. Rev. Stat. §§ 22-1-133, 23-1-137, and 22-43.7-109(5)(c.3), violates the Plaintiffs' First and Fourteenth Amendment rights under the U.S. Constitution and Plaintiffs' rights under Title

---

[4] By stipulation, "Plaintiffs and Defendants agree[d] that any relief Plaintiffs may obtain against Executive Director Kathryn Redhorse, in her official capacity as Executive Director of the Colorado Commission of Indian Affairs, would afford Plaintiffs the full relief to which they are entitled."  ECF No. 35 ¶ 2; *see also* ECF No. 39 ¶ 35.

VI of the Civil Rights Act of 1964.  In particular, Plaintiffs bring claims under 42 U.S.C. § 1983 for (1) racial discrimination in violation of their Fourteenth Amendment right to equal protection; (2) political process discrimination in violation of their Fourteenth Amendment right to equal protection; and (3) violation of their First Amendment right to petition, as well as a claim for (4) racial discrimination and hostile environment in violation of Title VI of the Civil Rights Act.  *See* ECF No. 39 ¶¶ 69–197.  Finally, Plaintiffs request injunctive relief against Defendants, prohibiting enforcement or threats to enforce SB 21-116.  ECF No. 1 ¶¶ 198–209.

Plaintiffs allege that SB 21-116 "sweeps derisive, neutral, and honorific uses of Native American names and imagery together into the universal term 'American Indian mascot'" and that "culturally appropriate Native American names, logos, and imagery serve to honor Native Americans, and to help public schools neutralize offensive and stereotypical Native American caricatures and iconography, while teaching students and the general public about American Indian history."  ECF No. 39 ¶¶ 5–6.  According to Plaintiffs:

> Erasing Native American names and images from the public square and from public discussions echoes a maneuver that Plaintiffs have previously seen used by the eradicators of Native American heritage.  Colorado repeats the same mistake in its paternalistic assumption that it must protect Native Americans by erasing cultural references to them and to their heritage.

ECF No. 39 ¶ 9.  As stated above, one of the mascots that Plaintiffs seek to preserve is Lamar High School's team name, the "Savages."  *Id.* ¶ 31.

On February 2, 2022, Defendant filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 42.  Plaintiff responded and moved for

summary judgment pursuant to Rule 56 on February 28, 2022.  ECF No. 47.  Defendant filed a reply in support of her motion to dismiss and cross-moved for summary judgment on March 18, 2022.  ECF No. 49.  Defendant's motion to dismiss and cross-motion for summary judgment, as well as Plaintiff's motion for summary judgment, are now fully briefed and ripe for review.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

Defendant moves for dismissal under Rule 12(b)(1) for lack of jurisdiction, arguing that Plaintiffs lack standing and that their claims are unripe.  ECF No. 42 at 5.  Under Rule 12(b)(1), a defendant may move to dismiss a complaint for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" or "controversies."  U.S. Const. art. III, § 2, cl. 1.  "The doctrines of . . . ripeness[] and [standing]," addressed below, "originate in Article III's 'case' or 'controversy' language."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen*, 511 U.S. at 377 (internal citation omitted).

Defendant also moves for dismissal under Rule 12(b)(6) for failure to state a claim, ECF No. 42 at 7–14, and both parties have cross-moved for summary judgment under Rule 56, ECF Nos. 47, 49.  However, "a court lacking jurisdiction cannot render judgment

but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Caballero v. Fuerzas Amardas Revolucionarias de Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019).  Because the Court finds that dismissal for lack of jurisdiction is appropriate under Rule 12(b)(1), it may not consider the merits of the claims.

**B.     Standing**

In determining whether the court has subject matter jurisdiction over the claims, "'[o]ne element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  "Standing analysis . . . is as important as it is fact-sensitive."  *Schutz v. Thorne*, 415 F.3d 1128, 1132 (10th Cir. 2005).  "The doctrine is especially significant when federal courts sit in judgment over duly enacted state laws, given [courts'] concern about 'the proper—and properly limited—role of the courts in a democratic society.'"  *Id.* at 1132–33 (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).  Courts "address standing on a claim-by-claim basis; a plaintiff may have standing to bring some, but not all, claims raised in the complaint."  *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 813 (10th Cir. 2021).

"[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations, citations, and footnote omitted).  A "theory of standing" that "relies on

a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410.

"Second, there must be a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotations and citation omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561; *see also Spokeo*, 578 U.S. at 338.

Where, as here, an organizational plaintiff invokes federal jurisdiction, such plaintiff must "make specific allegations establishing that at least one identified member had suffered or would suffer harm" in order to establish standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)) ("An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.").

**C.      Ripeness**

In addition, "[i]n order for a claim to be justiciable under Article III, it must be shown to be a ripe controversy."  *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).  "Ripeness is peculiarly a question of timing," which is "intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Id.* (internal quotations and citations omitted). "[D]eterminations of ripeness are guided by a two-factor test, requiring [courts] to evaluate both the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration."  *Id.* (internal quotations and citations omitted).

"In determining whether an issue is fit for judicial review, the central focus is on 'whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Id.* (quoting 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure*, § 3532 (3d ed.)).  "In assessing the hardship to the parties of withholding judicial resolution, [a court's] inquiry typically turns upon whether the challenged action creates a 'direct and immediate' dilemma for the parties."  *Id.* (internal quotations and citations omitted).  "It is the burden of the complainant to allege facts demonstrating the appropriateness of invoking judicial resolution of the dispute."  *Id.* (citing *Renne v. Geary*, 501 U.S. 312, 317 (1991)).

## III.      ANALYSIS

Defendant argues that the Plaintiffs' claims should be dismissed for lack of jurisdiction under Rule 12(b)(1) because Plaintiffs lack standing to bring their claims and because Plaintiffs' claims are unripe.  ECF No. 42 at 4–7; *see also* ECF No. 49 at 7–8.

For the reasons stated below, the Court agrees and finds that the claims are not justiciable under Article III of the Constitution and DISMISSES Plaintiffs' claims WITHOUT PREJUDICE for lack of jurisdiction.[5]   As a result, the Court cannot address whether Defendant is entitled to dismissal for failure to state a claim or whether the parties are entitled to judgment as a matter of law on the substantive claims.

### A.      Fourteenth Amendment Equal Protection Claim: Racial Discrimination

Plaintiffs allege that SB 21-116 racially discriminates against them, in violation of their right to equal protection under the Fourteenth Amendment.  The Plaintiffs have not established standing to bring their racial discrimination claim, and it is therefore properly dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

---

[5] "[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216–18 (10th Cir. 2006) (emphasis in original).

Plaintiffs are current students, alumni, and a former employee[6] of Colorado public schools, as well as a non-profit organization of which one Plaintiff is a member.[7]   ECF No. 39 ¶¶ 29–34.   In response to Defendant's challenge to their standing to bring this claim, Plaintiffs argue that they have suffered an injury in fact that confers a cognizable claim under the Equal Protection Clause.   Plaintiffs argue that they seek to "vindicate th[eir] constitutional interest" regarding "race-conscious differential treatment . . . in the context of state mandates covering schools."  ECF No. 47 at 19.[8]  In addition, they argue that the students and (former) public school teacher "are immediately affected by SB 21-116's racial classifications."  *Id.*; *see also* ECF No. 39 ¶¶ 70–71; ECF No. 50 at 5 (arguing that "racial discrimination itself is a cognizable injury").

These broad-sweeping arguments are merely conclusory and do not sufficiently carry Plaintiffs' burden to establish standing.  *See Kokkonen*, 511 U.S. at 377.  To satisfy

---

[6] Plaintiffs state in their Combined (1) Response to Defendants' Motion to Dismiss; and (2) Motion for Summary Judgment that one of the Plaintiffs—presumably Plaintiff Smith—"substitute teaches" at Yuma High School.  ECF No. 47 at 21.  However, on a motion to dismiss, the Court reviews "the sufficiency of the allegations within the four corners of the complaint," *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994), and "plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss," *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (Blackburn, J.).  The Amended Complaint only alleges that Plaintiff Smith "is the pastor of Yuma Christian Church and . . . .  has previously taught in Colorado public schools, including Yuma."  ECF No. 39 ¶ 33.  The Amended Complaint contains no allegation that Plaintiff Smith is currently a substitute teacher at Yuma High School.  *See id.*

In their statement of fact for their motion for summary judgment, consideration of which the Court does not reach here, Plaintiffs cite to a Declaration by Plaintiff Smith filed in this case, ECF No. 4-2.  *See* ECF No. 47 ¶ 26.  However, that Declaration merely states that Plaintiff Smith "ha[s] substitute taught for Yuma public schools" and discusses what would occur if he were "to substitute teach again," but it does not state that he currently substitute teaches for any Colorado public school.  ECF No. 4-6 ¶¶ 3, 13.  For these reasons, the Court need not consider whether Plaintiff Smith brings his claims as a substitute teacher at a Colorado public school.

[7] If the Plaintiff member of the non-profit organization does not have standing to bring a claim, then the organization lacks associational standing to bring the claim.  *See Summers*, 555 U.S. at 498.

[8] When citing to documents in the Court's Electronic Case Files ("ECF") system, the Court cites to the page number generated in the ECF filing stamp, rather than the page number of the underlying document.

the injury in fact requirement for Article III standing, a plaintiff must allege an injury that is "particularized."  The Supreme Court has specified that an injury is "particularized" only where the plaintiff is affected "in a personal and individual way."  *Lujan*, 504 U.S. at 561. To satisfy this injury-in-fact test, Plaintiffs therefore must allege more than an injury to *someone's* concrete, cognizable interest; they must "be [themselves] among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972).  The Plaintiffs fail to identify any *personal* injury allegedly suffered by the Plaintiffs here.  The Plaintiffs do not state what the alleged "specific injuries" are, nor do they identify whether or how any of the Plaintiffs has been or will be individually injured.[9]

While the Plaintiffs here may have a desire to use Native American imagery at schools, that is simply not sufficient to impart them with standing to bring the instant suit. "[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy."  *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982).  Indeed, "claims of injury that are purely abstract, even if they might be understood to lead to the psychological consequence presumably produced by observation of conduct with which one disagrees, . . . do not provide the kind of particular, direct, and concrete injury that is necessary to confer standing to sue in federal courts."  *Wilson v. Glenwood Intermountain Props., Inc.*, 98 F.3d 590, 595–96 (10th Cir. 1996) (holding plaintiffs' mere receipt of discriminatory advertisements was insufficient to confer standing) (internal quotations and citations omitted).  To the extent

---

[9] As further evidence that this injury is not particularized and personal, any future enforcement of the statute would be against the *schools*, in the form of a fine, not against any individual Plaintiff here.  *See 303 Creative LLC v. Elenis*, 6 F.4th 1160, 1171–73 (10th Cir. 2021).

that Plaintiffs argue that they are or will be denied equal protection by observing their former or current schools or former employer(s) changing their mascots, or declining to adopt certain mascots, in order to avoid a fine under SB 21-116, this is precisely the type of "abstract" claim that "might be understood to lead to the psychological consequence presumably produced by observation of conduct with which one disagrees" that is insufficient to establish standing.  *See Wilson*, 98 F.3d at 595–96; *see also Allen*, 468 U.S. at 755.

To the extent that the Plaintiffs premise their claims on the idea that schools' removal of or refusal to adopt mascots reflecting their culture or heritage constitutes racial discrimination that harms them, Plaintiffs have cited to no case law indicating that having the school mascot of reflecting one's heritage or culture is a "legally protected interest" under the Fourteenth Amendment that has been "inva[ded]" by this Act.  *See Lujan*, 504 U.S. at 560.  Neither has the Court identified any such case law.  In the equal protection context, the Supreme Court has found the following to be examples of constitutionally protected interests:

- admission to an undergraduate program, *see Gratz v. Bollinger*, 539 U.S. 244, 249–50, 261–62 (2003);

- admission to a medical or law school program, *see, e.g.*, *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 269–70, 280 n.14 (1978) (medical school); *Grutter v. Bollinger*, 539 U.S. 306, 317 (2003) (law school);

- appointment to a board of education, *see Turner v. Fouche*, 396 U.S. 346, 361 n.23, 361–62 (1970);

- the award of city contracts, *see Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993);

- "making suitable low-cost housing available in areas where such housing is scarce," *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 262 (1977); and

- racially segregated voting districts in which a plaintiff lives, *see Shaw v. Reno*, 509 U.S. 630, 642 (1993) (discussing "redistricting legislation that [was] so extremely irregular on its face that it rationally can be viewed only as an effort to segregate the races for purposes of voting"); *Miller v. Johnson*, 515 U.S. 900, 909 (1995) (holding that residents of a racially gerrymandered voting district had standing to bring an Equal Protection claim); *cf. United States v. Hays*, 515 U.S. 737, 739, 746 (1995) (holding that non-residents of an allegedly racially gerrymandered voting district did not have standing).

*See also Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1631 n.6 (2020) (Sotomayor, J., dissenting) (collecting the "myriad cases involving noneconomic injuries" in which the Supreme Court has found standing).  Having a school mascot representing one's culture and heritage is not among these "legally protected interest[s]."  *See Lujan*, 504 U.S at 560.

The Plaintiffs argue that their "claims resonate in the same theory underlying the *Arce* case."  ECF No. 47 at 24, 29; *see also id.* at 19; ECF No. 50 at 5–6.  However, that case is distinguishable.  The Ninth Circuit remanded the equal protection claim for trial, holding that the district court abused its discretion in *sua sponte* granting summary judgment in favor of the defendants on that claim.  *Arce v. Douglas*, 793 F.3d 968, 976–81 (9th Cir. 2015).  The Ninth Circuit found that there was "sufficient evidence to raise a genuine issue of material fact as to whether the enactment and/or enforcement of [the statute] [t]here challenged was motivated, at least in part, by an intent to discriminate against . . . students [in the Mexican American Studies program in Tucson public schools] on the basis of their race or national origin."  *Id.* at 981.

The Ninth Circuit's decision in *Arce* does not analyze the issue of standing in the context of that equal protection claim, but to the extent that the plaintiffs' standing was implicit in the Ninth Circuit's holding, the interests and alleged injuries at issue there are distinguishable from those at issue here.   There, the issue was the student plaintiffs' "interest in knowing more about their cultural heritage and that of their community" through the curriculum developed through the Tucson public schools' Mexican American Studies program.  *Id.* at 973.  The Ninth Circuit noted that in *Board of Education, Island Trees Union Free School District No. 26 v. Pico*, 457 U.S. 853, 866–67 (1982), "a plurality of the Supreme Court recognized that 'the right to receive ideas is a necessary predicate to the *recipient's* meaningful exercise of his own rights of speech, press, and political freedom.'"  *Id.* at 981 (quoting *Pico*, 457 U.S. at 867) (emphasis in original).

No such theory has been advanced here.  Plaintiffs' allegation here that is most analogous to the claim in *Arce* is that they are harmed by the inability "to use imagery and iconography adopted by school districts or other educational entities as avenues through which they educate others about their race, ethnic heritage, traditions, religious beliefs, exercise and practices."  ECF No. 39 ¶ 74.  However, as discussed above, Plaintiffs have not identified, nor is this Court aware of any authority regarding a constitutional right to representation of one's culture or heritage—for purposes of fostering dialogue or otherwise—in a public school mascot.  (Nor have Plaintiffs established that, without a school mascot reflecting their heritage, they are incapable of "educat[ing] others about their race, ethnic heritage, traditions, religious beliefs, exercise and practices."  *See id.*)

There is simply no legal support for a finding of injury in fact based on the facts before the Court here.

Even if Plaintiffs were to establish that SB 21-116 violates a constitutionally protected interest, that would not be sufficient.  "[A] plaintiff must also sufficiently allege injury suffered *as a consequence* of" a constitutional violation.  *Heath v. Board of Cnty. Comm'rs of Boulder Co*., 92 F. App'x 667, 672 (10th Cir. 2004) (emphasis added); *see also id*. at 673 ("Even assuming [the plaintiff] has sufficiently stated cognizable violations of his rights to substantive due process and equal protection, he must still demonstrate injury as a result of the County's alleged unconstitutional actions in order to have standing.").  Hence, even if the Plaintiffs identify a constitutional violation, they also need to establish an injury that was a consequence of the constitutional violation.

Plaintiffs allege that "SB 21-116 demeans and stigmatizes Native Americans based on their race, color, and national origin."  ECF No. 39 ¶ 77; *see also id.* ¶ 70–71.  Stigmatic injury "accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct."  *Allen*, 468 U.S. at 755 (internal quotations and citation omitted), *abrogated in part on other grounds*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).  As discussed above, the type of harm alleged here "do[es] not provide the kind of particular, direct, and concrete injury that is necessary to confer standing to sue in federal courts."  *Wilson*, 98 F.3d at 595–96.

Plaintiffs also argue that they "seek to vindicate [their] constitutional interest" in the identification of schools "based on specific racial characteristics of their names, images,

and logos." ECF No. 47 at 19. However, "[r]ecognition of standing in . . . circumstances [in which personal denial of equal treatment is not alleged] would transform the federal courts into 'no more than a vehicle for the vindication of the value interests of concerned bystanders." *Allen*, 468 U.S. at 755–56. Here, Plaintiffs' desire to "vindicate . . . constitutional interest[s]," ECF No. 47 at 19, is precisely the type of harm that the Supreme Court found does not confer standing in *Allen*.

Finally, Plaintiffs allege that "[u]ltimately, SB 21-116 denies Native Americans the opportunity to honor their heritage by provoking conversations and engaging with others about racial identity and racial stereotypes within and without the Native American community, helping others to understand the difference between appropriate and inappropriate use of Native American history and imagery." ECF No. 39 ¶ 78; *see also id.* ¶¶ 73–75. At the very least, this allegation fails to satisfy the "causation connection" element of standing. *See Lujan*, 504 U.S. at 560. As noted, Plaintiffs have not established that SB 21-116 prevents them from "provoking conversations"; "engaging with others about racial identity and racial stereotypes"; or "helping others to understand the difference between appropriate and inappropriate use of Native American history and imagery." *See* ECF No. 39 ¶ 78. Arguably, as exemplified by the work of the commission noted in the text of SB 21-116 and this litigation, SB 21-116 has "provok[ed]" the very conversations that Plaintiffs allege it denies their opportunity to have. *See id.* ¶ 78. To the extent Plaintiffs allege that the harm is specifically their inability to "use imagery and iconography adopted by school districts or other educational entities," for the reasons discussed above, there is no constitutionally protected interest in a school mascot that

reflects one's heritage or culture, such that the invasion of that interest would confer standing on these Plaintiffs.  *See id.* ¶ 74; ECF No. 47 at 23.

Indeed, the Plaintiffs appear to acknowledge in their briefing that there is no right establishing "that schools *must* use American Indian names or imagery in the abstract, or that [Plaintiffs] are entitled to preserve a fixed number of American Indian mascots."  ECF No. 47 at 23.  The Plaintiffs have thus failed to establish that their alleged injury was a consequence of a violation of a constitutionally protected interest.  For these reasons, Plaintiffs have failed to carry the burden to establish standing to bring their equal protection claim for racial discrimination, and that claim must be dismissed.  Therefore, the Court does not assess the merits of this claim or the parties' motions for summary judgment on this claim.  *See Caballero*, 945 F.3d at 1273 ("A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking.").

## B.   Fourteenth Amendment Equal Protection Claim: Political Process Discrimination

Plaintiffs secondarily allege political process discrimination under the equal protection clause of the Fourteenth Amendment.  For the reasons stated above, and for the reasons set forth below, the Court finds that the Plaintiffs have failed to establish standing to bring this second cause of action. The claim must therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

When addressing standing, the Plaintiffs combine their arguments as to their first and second causes of action. *See* ECF No. 47 at 19-20; ECF No. 50 at 6. Those arguments are unpersuasive for the reasons set forth above in Section III.A.   While

Plaintiffs fail to offer any argument specific to their second cause of action, the Court nonetheless considers whether existing case law supports a finding of jurisdiction here.

Plaintiffs' Amended Complaint alleges generally that, under SB 21-116, Native American individuals must undertake a process that is not necessary for individuals of non-Native American heritage in order for a school to adopt a mascot reflecting their heritage.  *See* ECF No. 39 ¶¶ 109–12.  While not addressed by the Plaintiffs in their arguments regarding standing, this Court acknowledges that the "injury in fact" requirement for equal protection claims like these may be met when the Plaintiff can identify the imposition of a barrier that denies him an equal opportunity to obtain a government benefit.  *See City of Jacksonville*, 508 U.S. at 666.  Even under this framework, however, the Plaintiffs' claim fails.  While the imposition of a barrier may constitute an "injury in fact," the Plaintiffs must still establish that the "interest" they deem to have been invaded was "legally protected" and "particularized."  *See Lujan*, 504 U.S. at 560.  The Plaintiffs have failed to meet either requirement.

The Plaintiffs argue that they "have alleged that they are injured by the political process set in place by SB 21-116."  However, the Plaintiffs have not explained *how* they are personally injured by the political process. The Supreme Court has specifically instructed that "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured."  *Lujan*, 504 U.S. at 563.  To establish standing, a plaintiff must therefore show that they will be "directly" affected *apart from* their purported "special interest" in the subject.  *Id.*

Further still, the Plaintiffs have failed to show how the use of a native American mascot is, itself, a cognizable interest or a "government benefit" such that a barrier thereto would be in violation of the constitution.  Indeed, the text of SB 21-116 considers and sets forth the racist history of many Native American mascots such as "Eaton high school's large-nosed caricatures" and "Lamar high school's 'Chief Ugh-Lee' mascot."  *See* ECF No. 42-1 at 2.  This purported "benefit" differs starkly from the benefits accepted by courts when considering equal protection claims.  *See, e.g.*, *City of Jacksonville*, 508 U.S. at 666 (relevant government benefit was an award of city contracts); *Cache Valley Elec. Co. v. State of Utah Dep't of Transp.*, 149 F.3d 1119, 1122 (10th Cir. 1998) (relevant government benefit was government subsidized contract); *Schutz*, 415 F.3d at 1133–34 (relevant government benefit was a state hunting license); *Buchwald v. University of N.M. Sch. of Med.*, 159 F.3d 487, 492–93 (10th Cir. 1998) (relevant government benefit was admission to medical school).

It is Plaintiffs' burden to establish standing.  *Lujan*, 504 U.S. at 561; *Spokeo*, 578 U.S. at 338; *Kokkonen*, 511 U.S. at 377.  Here, Plaintiffs have failed to carry the burden to establish that the choice of a school mascot is a "legally protected interest" that has been "inva[ded]," *Lujan*, 504 U.S. at 560, by the erection of a "barrier" provided in SB 21-116, *see City of Jacksonville*, 508 U.S. at 666.  Further, "[t]he doctrine [of standing] is especially significant" in situations like this, "when federal courts sit in judgment over duly enacted state laws, given [courts'] concern about 'the proper—and properly limited—role of the courts in a democratic society.'"  *See Schutz*, 415 F.3d at 1132–33 (quoting *Allen*,

468 U.S. at 750).  The Court is sensitive to that concern.[10]  Therefore, Plaintiffs have not alleged any "injury in fact" as to their political process claim arising under their Fourteenth Amendment right to equal protection; therefore, they lack standing to bring that claim. *See Lujan*, 504 U.S. at 561.

### C.    First Amendment Claim

Plaintiffs also bring a claim under the First Amendment, alleging that the Act is "impermissibly vague" and that it "is an unconstitutional violation of Plaintiffs' First Amendment right to petition . . . under the U.S. Constitution."  ECF No. 39 ¶¶ 137, 144. The Petition Clause of the First Amendment provides that "Congress shall make no law . . . abridging . . . the right of the people peaceably . . . to petition the Government for a redress of grievances."  U.S. Const., amend. I.  Plaintiffs allege that "SB 21-116 contains vague language" and that "Plaintiffs on occasion have or will engage in efforts to persuade school districts or other educational entities to name themselves in honor of Native Americans."  ECF No. 39 ¶ 128.

However, Plaintiffs' own allegations and argument highlights the deficiencies in their claim, with regard to standing.  The Plaintiffs argue that they were denied the right to petition their local school boards to change their mascots, but they then acknowledge that "Plaintiff Marez . . . specifically petitioned Lamar High School to change its name to

---

[10] The Supreme Court opinion in *Schuette v. Coalition to Defend Affirmative Action, Integration & Immigration Rights & Fight for Equality by Any Means Necessary* raised similar concerns, noting that that case, which involved a "political process" equal protection claim, was "not about how the debate about racial preferences should be resolved.  It is about who may resolve it.  There is no authority in the Constitution of the United States or in this Court's precedents for the Judiciary to set aside [state] laws that commit this policy determination to the voters. . . .  Democracy does not presume that some subjects are either too divisive or too profound for public debate."  572 U.S. 291, 314 (2014).

Lamar Black Kettle" and "Plaintiff Roubideaux petitioned that Yuma High School be named after his Lakota ancestor, Tall Bull."  ECF No. 47 at 32; *see also* ECF No. 39 ¶¶ 31–32.  The allegation that the Plaintiffs were denied the right to petition by the statue is thus directly refuted by their own arguments.

In their briefing, the Plaintiffs argue that they have established standing to bring their First Amendment claim because "two plaintiffs adequately allege an injury and continue to be injured due to their *failed efforts* at petitioning."  ECF No. 47 at 21 (emphasis added).  However, the Plaintiffs go on to admit that "Plaintiffs are not arguing that they have a right to *succeed* at petitioning."  *Id.* at 33.  The Plaintiffs therefore specifically acknowledge that their alleged injury here is not to a legally protected interest.  For this reason, the Plaintiffs who have already petitioned with no consequence to themselves lack standing.[11]  Because Plaintiff Marez lacks standing to bring this claim, so does Plaintiff NAGA.  *See Summers*, 555 U.S. at 498.

As for the remaining plaintiffs, they have not petitioned any school to change or keep any mascot, *see* ECF No. 39 ¶¶ 29–30, 33; therefore, they have not established any injury that is "actual or imminent, not conjectural or hypothetical."  *See Lujan*, 504 U.S. at 560.[12]  These Plaintiffs here have not alleged that they suffered an injury in fact to a

---

[11] The standing inquiry in this case differs slightly, but meaningfully, from that discussed in *Santa Fe Alliance for Public Health & Safety v. City of Santa Fe*, 993 F.3d 802, 817 (10th Cir. 2021). There, the court found that the plaintiffs had standing to bring suit because the statutes at issue actually "preclud[ed] local officials from adopting the [plaintiff's] preferred position."  *Id.*  SB 21-116 does not preclude the adoption of the Plaintiffs' preferred mascot here; it merely sets forth certain requirements for the adoption of Native American mascots.

[12] Moreover, Plaintiffs appear to admit that the Plaintiffs who have not made any attempt to petition a school lack standing.  *See* ECF No. 47 at 20 (arguing that only Plaintiffs Marez, Roubideaux, and NAGA possess standing).

legally protected First Amendment interest, and they therefore have failed to establish standing to bring their First Amendment claim.

For these Plaintiffs, to the extent they allege that they "*will* engage in efforts to persuade school districts or other educational entities to name themselves in honor of Native Americans," ECF No. 39 ¶ 128, the First Amendment claim also appears to be unripe. This allegation "involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *See Gonzales*, 64 F.3d at 1495, 1499. Although "[t]he customary ripeness analysis . . . is . . . relaxed somewhat in circumstances such as this where a facial challenge, implicating First Amendment values, is brought," the "mere existence of a statute . . . is ordinarily not enough to sustain a judicial challenge, even by one who reasonably believes that the law applies to him and will be enforced against him according to its terms." *Id*. "In assessing the hardship to the parties of withholding judicial resolution, [the] inquiry typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties." *Id*. (internal quotations and citation omitted). Here, Plaintiffs have not petitioned any school, and nowhere does the language of the statute place a penalty on individuals that would deter them from petitioning a school regarding their mascot preference. Therefore, the statute does not create any "immediate dilemma" regarding whether these Plaintiffs may or should make such a petition. *See id.*

For these reasons, the Court lacks subject matter jurisdiction over Plaintiffs' First Amendment claim because all Plaintiffs lack standing to bring this claim, and the claim is not ripe as to Plaintiffs John Doe, Jane Doe, and Smith. *See Gonzales*, 64 F.3d at 1498–

99 ("The question of ripeness, like other challenges to a court's subject matter jurisdiction, is treated as a motion under Rule 12(b)(1)."). The parties' First Amendment claim should be dismissed.

### D. Title VI Racial Discrimination and Hostile Environment Claim

Finally, Plaintiffs bring a claim for violation of Title VI of the Civil Rights Act of 1964. ECF No. 39 ¶¶ 151–97. Under Title VI of the Civil Rights Act, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d; *see also* 42 U.S.C. § 2000d-4a (defining "program or activity"). Plaintiffs allege that "SB 21-116 unlawfully discriminates against Plaintiffs 'on the ground of race, color, or national origin.'" ECF No. 39 ¶¶ 158 (quoting 42 U.S.C. § 2000d). Plaintiffs also allege that "each of the elements for a hostile environment claim are satisfied," and therefore, "Defendant is liable under Title VI of the Civil Rights Act." *Id.* ¶ 165. Defendant does not dispute that Colorado and its public schools are subject to Title VI.

With respect to their Title VI claim, the Plaintiffs only argue that Plaintiffs Doe, Doe, and Smith possess standing. *See* ECF No. 47 at 21. The Plaintiffs argue that these plaintiffs have suffered an injury in fact because "it is injurious to suffer a hostile environment." *Id.* However, the Plaintiffs have not pleaded *with particularity* how they "actual[ly] or imminent[ly]" suffer or will suffer an injurious hostile environment. *See Lujan*, 504 U.S. at 560; *Valley Forge*, 454 U.S. at 482 (standing requirements are not satisfied by "the abstract injury in nonobservance of the Constitution asserted by ... citizens").

In arguing the merits of this claim, the Plaintiffs point out that they are injured because they are denied the opportunity "to honor their heritage by provoking conversation and engaging with others about racial identities and racial stereotypes within and without the Native American community."  ECF No. 47 at 35; *see also* ECF No. 39 ¶ 168.  Again, the Plaintiffs have not alleged any facts showing that SB 21-116 prohibits them from having conversations or engaging with others.  And there is simply no reading of SB 21-116 that supports that interpretation.  There is nothing about the existence of the statute or the language of the statute that precludes Plaintiffs from "honor[ing] their heritage by provoking conversation and engaging with others about racial identities and racial stereotypes within and without the Native American community."  *See id.*

Nor do Plaintiffs Roubideaux, Smith, and Marez (and, thereby, NAGA) have prudential standing to assert the Title VI claim.  In addition to Article III standing, "[t]he Supreme Court's standing jurisprudence contains . . . prudential standing which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (internal quotations and citation omitted).  "The prudential standing doctrine encompasses various limitations, including the general prohibition on a litigant's raising another person's legal rights."  *Id.* (internal quotations and citation omitted).  Therefore, pursuant to that doctrine, "[t]o bring a Title VI claim, a plaintiff must be the intended beneficiary of a federally funded school program." *I.G. ex rel. Grunspan v. Jefferson Cnty. Sch. Dist.*, 452 F. Supp. 3d 989, 998 (D. Colo. 2020) (Brimmer, C.J.) (finding that the parent of a public school student lacked prudential standing to bring Title VI claims).  "The intended beneficiaries of a federally funded public

school program are school children." *Id.* (quoting *Jackson v. Katy Indep. Sch. Dist.*, 951 F. Supp. 1293, 1298 (S.D. Tex. 1996)).  Plaintiffs Roubideaux and Marez are alumni of public schools, and Plaintiff Smith is a former public school teacher.[13]  ECF No. 39 ¶¶ 31–33.  Because they are not the intended beneficiaries of the federally funded school program, these Plaintiffs lack prudential standing to bring the Title VI claim here.

Further, as for Plaintiffs Jane and John Doe, any claim of discrimination or a hostile environment in violation of Title VI is also not ripe.  The Tenth Circuit has provided the following four-part test for hostile environment claims under Title VI: "[T]he plaintiff must allege that the [school] district (1) had *actual knowledge of*, and (2) was *deliberately indifferent* to (3) harassment that was so *severe, pervasive and objectively offensive* that it (4) *deprived the victim of access* to the educational benefits *or opportunities* provided by the school."  *Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty.*, 334 F.3d 928, 934 (10th Cir. 2003) (emphasis and alteration in original).

As for the first three elements, Plaintiffs have pointed to no current or previous "harassment" of which Defendants could have had "actual knowledge" but to which they were "deliberately indifferent."  *See* No. 39 ¶¶ 29–30, 151–97.  At most, Plaintiffs argue in their Combined Response to Defendant's Motion to Dismiss and Motion for Summary Judgment that Plaintiffs "*will* be injured by the removal—not just of the sports team name the Indians—but by Yuma High School being compelled to eliminate their beliefs, practices, rituals, actions, and other cultural symbols stripped from the hallways and walls of their school."  ECF No. 47 at 21 (emphasis added).  Hence, the crux of Plaintiffs'

---

[13] *See supra* note 6.

discrimination and hostile environment claim is that, because SB 21-116 has been enacted and imposes a fine for the use of American Indian mascots after June 1, 2022, Plaintiffs likely will be subjected to discrimination or a hostile environment at their school because the school will be "stripped" of its current mascot.  *See id.*  Plaintiffs do not argue that either of the student Plaintiffs are currently facing discrimination or a hostile environment, as the allegations look to contingent future events.

This claim is not ripe for review.  It is not "fit[] . . . for judicial resolution" because it "involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Gonzales*, 64 F.3d at 1499.  Neither the Court nor the parties have any way of knowing if the alleged future discrimination or harassment will take place in the manner that Plaintiffs claim or that it will have "so severe, pervasive and objectively offensive" of an effect that it will "deprive[] the victim[s] of access to the educational benefits or opportunities provided by the school."  *Bryant*, 334 F.3d at 934 (emphasis omitted).  Hence, Plaintiffs have failed to carry their burden "to allege facts demonstrating the appropriateness of invoking judicial resolution of the dispute" regarding Plaintiffs' Title VI claim.[14]  *See Gonzales*, 64 F.3d at 1499.

In sum, no Plaintiff has standing to bring the Title VI claim, and it is unripe as to Plaintiffs Jane and John Doe, and the claim must therefore be dismissed for lack of

---

[14] *See supra* note 9.

jurisdiction. Because Plaintiffs lack standing to bring any of their substantive claims,[15] they similarly lack standing to pursue injunctive relief on the basis of those claims.

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Motion to Dismiss, ECF No. 42, and DISMISSES Plaintiffs' claims WITHOUT PREJUDICE, for lack of jurisdiction.


DATED: May 5, 2022

BY THE COURT:



_____
REGINA M. RODRIGUEZ
United States District Judge

---

[15] Defendant also argues that Plaintiffs' claims are not ripe because "there is no guarantee" that schools will actually change their mascots and "[b]ecause Plaintiffs' schools may never change their mascots, their alleged injury 'involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *See* ECF No. 42 at 6–7 (quoting *Gonzales*, 64 F.3d at 1499). Given that the Court finds that Plaintiffs lack standing to bring their Fourteenth Amendment claims for the reasons stated, the Court need not address this argument.